**Creighton C. HORTON II, Petitioner,**

v.

**UTAH STATE RETIREMENT BOARD, Respondent.**

**No. 920273–CA.**

Court of Appeals of Utah.

Dec. 1, 1992.

Creighton C. Horton II, pro se.

Mark A. Madsen (argued), and Kevin A. Howard, Salt Lake City, for respondent.

Before BILLINGS, JACKSON and RUSSON, JJ.

## OPINION

RUSSON, Judge:

Creighton C. Horton II, appeals the Utah State Retirement Board's order denying him membership in the contributory retirement system established by the Public Employees' Retirement Act, Utah Code Ann. §§ 49–2–101 to –802 (Supp.1987). We affirm.

## I. FACTS

Horton began working for the Salt Lake County Attorney's Office in 1978. At that time, he joined the Public Employee's Retirement System, under which individual members contributed a portion of their monthly pay to a retirement account.

In July 1983, Salt Lake County and the State of Utah began a modified version of the previous system, which was referred to as the "contributory system." Under the contributory system, the member and the employer jointly contributed to the employee's account, with the employer paying into the contributory system in lieu of pay increases. Under this system, the contributions immediately vested to the employees' benefit and could be withdrawn upon termination of employment.

In 1986, while Horton was still employed by the Salt Lake County Attorney's Office, the Utah Legislature enacted the Public Employees' Noncontributory Retirement Act, Utah Code Ann. §§ 49–3–101 to –802 (Supp.1987). This act created a new retirement system known as the "noncontributory system," under which members could no longer contribute to the system, but all contributions were paid by employers. Further, members could not withdraw employer contributions upon termination of employment; rather, all contributions would remain in the retirement fund to pay benefits for members with four or more years of credited service.

The new act required all State employers to adopt the noncontributory system, thus compelling all new State employees to enroll in that system. However, the act allowed all other political divisions to elect between the contributory and the noncontributory systems. Additionally, employees covered under the contributory system at the time of the new law's enactment were given a six month period in which they could elect to remain in the contributory system or could voluntarily enroll in the noncontributory system.

On December 1, 1986, Horton, while still employed by Salt Lake County, elected to remain in the contributory retirement system. In September 1987, after the election period had run, Horton accepted a position with the Utah State Attorney General's Office. Prior to leaving the Salt Lake County Attorney's Office, Horton sought the opinion of the Utah State Retirement

Board's (the Board's) general counsel as to whether he could remain in the contributory system after leaving the County for State employment. He was advised that Utah Code Ann. § 49-3-203(1) (1992) would preclude him from remaining in the contributory system.[1] Nonetheless, Horton applied to the Board for continuing coverage under the contributory system after changing employment, claiming that he should be treated as a transferee "for purposes of maintaining [his] status under the contributory system." The executive director of the Board denied that application, and Horton subsequently notified the Board of his intent to appeal the executive director's decision to the Membership Council.

In October 1990, the parties entered into a Stipulation of Facts, and in October 1991, Horton submitted his case to the Board. On March 12, 1992, the adjudicative hearing officer entered an opinion, recommended findings of fact, conclusions of law and order, recommending a denial of Horton's petition to remain in the contributory system.

On April 9, 1992, the Board adopted and ratified the hearing officer's findings of fact, conclusions of law and order, denying Horton's request to remain in the contributory retirement system. The Board determined that, pursuant to Utah Code Ann. § 49-3-203(1) (1992), Horton was a new State employee, and as such, must "automatically become a member of the noncontributory system."

Horton appeals the Board's order, claiming: (1) that the Board erred in interpreting the statute and determining that he was a new State employee and thus required to enroll in the noncontributory retirement system; and (2) that the Board's application of the statute unconstitutionally impaired his right to contract, and deprived him of his due process rights and his right to equal protection under the law.

1. Utah Code Ann. § 49-3-203(1) (1992) provides:

Any person entering full-time employment with the state or its educational institutions

## II. STANDARD OF REVIEW

### A. Statutory Construction

Utah Code Ann. § 63-46b-16(4) (1989) of the Utah Administrative Procedures Act (UAPA) provides:

The appellate court shall grant relief only if, on the basis of the agency's record, it determines that a person seeking judicial review has been substantially prejudiced by any of the following:

. . . .

(d) the agency has erroneously interpreted or applied the law

. . . .

■ Under UAPA, this court will give deference to an agency's statutory construction only when "there is a grant of discretion to the agency concerning the language in question, either expressly made in the statute or implied from the statutory language." *Morton Int'l v. Auditing Div. of the Utah State Tax Comm'n*, 814 P.2d 581, 589 (Utah 1991). "[A]bsent a grant of discretion, a correction-of-error standard is used in reviewing an agency's interpretation or application of a statutory term." *Morton*, 814 P.2d at 588. In the case at bar, no explicit or implicit grant of discretion exists, therefore we review the Board's decision for correctness, giving no deference to the Board's interpretation of the statute in question.

### B. Constitutional Claims

■ With respect to Horton's constitutional claims, such are questions of law and "are to be reviewed under a correction of error standard, giving no deference to the agency's decision." *Questar Pipeline Co. v. Utah State Tax Comm'n*, 817 P.2d 316, 318 (Utah 1991) (citation omitted).

## III. ANALYSIS

### A. Statutory Construction

■ Horton argues that the Board erred in interpreting Utah Code Ann. § 49-3-

after the effective date of this chapter shall automatically become a member of the noncontributory retirement system.

203(1) (1992) as requiring him to enroll in the State's noncontributory retirement system. Specifically, Horton argues that the statutory language, when viewed in context with the entire statutory scheme and with Board Resolution # 86–15, is ambiguous and therefore should be resolved in his favor. The Board argues that the statute and resolution are unambiguous and clearly preclude Horton from remaining in the contributory retirement system. We agree.

Utah Code Ann. § 49–3–203(1) (1992) provides:

> Any person entering full time employment with the state or its educational institutions after the effective date of this chapter [July 1, 1986] shall automatically become a member of the noncontributory retirement system.

The plain language of section 49–3–203(1) requires that Horton enroll in the noncontributory retirement system. Horton terminated his employment with the Salt Lake County Attorney's Office in October 1987 and commenced full time employment with the Utah State Attorney General's Office shortly thereafter. As a new State employee, Horton could not remain in the contributory system, but was required, pursuant to section 49–3–203(1), to become a member of the noncontributory system. Further, there is no basis for Horton's claim that this section applied only to "new employees who had not already been members of the retirement system." Rather, this section applies to "any person entering

full time employment with the state." Thus, the statute clearly applies to Horton.

■ Moreover, Resolution # 86–15, passed by the Board in May 1986, specifically directs that Horton could not be treated as a transferee.[2] That resolution provides in pertinent part:

> NOW THEREFORE, BE IT RESOLVED, that the Board will consider any change in employment of a member between units covered by the Utah State Retirement System during the election period to be a transfer as long as the time between employment does not exceed 120 days and a refund of vested retirement contributions has not been taken.
>
> BE IT FURTHER RESOLVED that any change of employment from one employing unit to another after the election period will not be considered a transfer, and there will be no election of retirement systems.

Pursuant to the plain language of Resolution # 86–15, Horton, who changed employment between covered units after the election period had run, could not be considered a transferee. Rather, he was a new employee and as such could not elect between retirement systems, but was required to enroll in the noncontributory system.

## B. Constitutional Claims

Horton argues that the Board's application of the law unconstitutionally deprived him of his right to contract, his right to due

---

**2.** Administrative agency resolutions passed pursuant to a statutory grant of authority have the full force and effect of law. *See, e.g., Harsh Inv. Corp. v. State Housing Div.,* 88 Or.App. 151, 744 P.2d 588, 591 (1987) ("The rule adopted was within the statutory authority delegated to the agency; when the Division adopted it, the rule became binding as if the legislature itself had acted."), *review denied,* 305 Or. 273, 752 P.2d 1219 (1988). *See also Higginson v. Westergard,* 100 Idaho 687, 604 P.2d 51, 54 (1979) ("A rule or regulation of a public administrative body or officer ordinarily has the force and effect of law and is an integral part of the statute under which it is made just as though it were prescribed in terms therein."); *Hope Evangelical Lutheran Church v. Iowa Dep't of Revenue and*

*Fin.,* 463 N.W.2d 76, 84 (Iowa 1990) ("Administrative rules have the force of law and are presumed valid."), *cert. denied,* —— U.S. ——, 111 S.Ct. 1585, 113 L.Ed.2d 649 (1991); *Jaramillo v. Fisher Controls Co., Inc.,* 102 N.M. 614, 698 P.2d 887, 892 (N.M.App.1985) ("Legislatively authorized rules and regulations have the force of law."); *Toxic Waste Impact Group, Inc. v. Leavitt,* 755 P.2d 626, 630 (Okl.1988) ("Rules and regulations enacted by administrative agencies pursuant to the powers delegated to them have the force and effect of law and are presumed to be reasonable and valid.").

The Board passed Resolution # 86–15 pursuant to powers granted it by Utah Code Ann. § 49–1–203(14) (Supp.1987), and thus, the resolution carries the full force and effect of law.

process of the law, and his right to equal protection under the law. We disagree.

■ Horton first argues that the Board's decision denying him continuing coverage under the contributory system and requiring him to enroll in the noncontributory system impairs his right to contract under Article I, Section 10 of the United States Constitution and article I, section 18 of the Utah Constitution. Specifically, he argues that the Board's action impairs his vested right to remain in the contributory retirement system. Such argument is without merit.

Horton has not shown that he had any contract with the Board under which he could remain a member of the State contributory retirement system irrespective of his employer. When Horton voluntarily left the employ of Salt Lake County, where he had vested rights under the contributory system, to accept employment with the State, he forfeited all rights to membership in that system, and was required, pursuant to statute, to enroll in the noncontributory system.

Horton next argues that the Board's decision denying him membership in the contributory system violated his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution and article I, section 7 of the Utah Constitution.

With respect to Horton's federal constitutional claim, the United States Supreme Court has held:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information, and it must afford

a reasonable time for those interested to make their appearance.

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950) (citations omitted).

■ In the case at bar, Horton does not dispute that he was afforded adequate notice of the proposed action by the Board. Even before leaving the employ of Salt Lake County, Horton was advised that Utah Code Ann. § 49–3–203(1) (1992) would preclude him from remaining a member of the contributory system. Further, Horton was provided adequate opportunity to present his objections to the Board's actions. After the executive director denied his application to remain in the contributory system, Horton was afforded a formal evidentiary hearing before an adjudicative hearing officer on his claim. Because Horton received adequate notice of the Board's proposed action and was afforded a hearing to present his objections to such action, Horton's due process rights were not violated under the United States Constitution.

As to due process under article I, section 7 of the Utah Constitution, the Utah Supreme Court has stated that "the demands of due process rest on the concept of basic fairness of procedure and demand a procedure appropriate to the case and just to the parties involved." *Rupp v. Grantsville City*, 610 P.2d 338, 341 (Utah 1980) (footnote omitted). For the reasons articulated above, we conclude that Horton was afforded procedure appropriate to this case, and determine that he was not denied due process under the Utah Constitution.

Finally, Horton argues that the Board's application of the law deprived him equal protection of the law under the Fourteenth Amendment to the United States Constitution and article I, section 2 of the Utah Constitution.[3] Specifically, he claims that he should not be treated differently for retirement purposes simply because he left the County for employment with the State.

---

3. Article I, section 2 of the Utah Constitution is more a statement of government purpose than a legal standard, and is relevant to the construction of article I, section 24 of the Utah Constitution, which is the equivalent of the equal protection clause of the Fourteenth Amendment to the United States Constitution. *Malan v. Lewis*, 693 P.2d 661, 670 (Utah 1984). Therefore, we analyze Horton's claim under article I, section 24 of the Utah Constitution.

In analyzing an equal protection claim, "all statutes are presumed to be constitutional and the party challenging a statute bears the burden of proving its invalidity." *Blue Cross and Blue Shield v. State,* 779 P.2d 634, 637 (Utah 1989) (citations omitted). Equal protection analysis is guided by the general principle that "persons similarly situated should be treated similarly, and persons in different circumstances should not be treated as if their circumstances were the same." *Malan v. Lewis,* 693 P.2d 661, 669 (Utah 1984). "Whether a statute meets equal protection standards depends ... upon the objectives of the statute and whether the classifications established provide a reasonable basis for promoting those objectives." *Id.* at 670.

In the case at bar, Horton has not met his burden of proving that Utah Code Ann. § 49-3-203(1) (1992) unconstitutionally deprives him of equal protection under the Fourteenth Amendment to the United States Constitution or article I, section 24 of the Utah Constitution. Specifically, Horton has not demonstrated that the statute applies differently to those with whom he is similarly situated, namely new State employees. Rather, Horton argues that persons in different circumstances, specifically longstanding County employees who have elected to remain in the contributory system and new State employees, should be treated as if their circumstances were the same. Further, Horton has not addressed the specific objectives of the statute and demonstrated that the alleged statutory classification does not provide a reasonable basis for promoting such objectives. Accordingly, we conclude that the statute does not deprive Horton equal protection under the Fourteenth Amendment to the United States Constitution or article I, section 24 of the Utah Constitution.

## IV. CONCLUSION

Based on the foregoing, we affirm the Board's order denying Horton's petition to remain in the State's contributory retirement system.

BILLINGS and JACKSON, JJ., concur.